AMERICAN HOUSING PRESERVATION )
CORPORATION and MAINLAND )
DEVELOPMENT CO., )
                                  )
     Plaintiffs, )
                                  )
v. )      CASE NO. CV414-004
                                  )
NEF ASSIGNMENT CORPORATION, as )
nominee for National Equity )
Fund, Inc., )
                                  )
     Defendant. )
                                  )

## O R D E R

Before the Court is Defendant's Motion for Joinder of Additional Parties (Doc. 9), to which Plaintiffs have filed a response (Doc. 14). In addition, Plaintiffs have filed a Motion to Dismiss Defendant's counterclaims. (Doc. 17.) Defendant has filed a reply in defense of its Motion for Joinder (Doc. 19) and a response to Plaintiffs' Motion to Dismiss (Doc. 22). For the reasons that follow, Defendant's Motion for Joinder (Doc. 9) is **GRANTED** and Plaintiffs' Motion to Dismiss (Doc. 17) is **DENIED**. SNAP Investment, LLC shall be joined in this action as a counterclaim-defendant. SNAP Housing Limited Partnerships I, II, and III shall be joined in this action as counterclaim-plaintiffs.

## BACKGROUND

This declaratory judgment action has been brought by Plaintiffs American Housing Preservation Corporation ("American Housing") and Mainland Development Company ("Mainland") seeking a declaration of rights pursuant to partnership agreements between them and Defendant NEF Assignment Corporation ("NEFAC"). (Doc. 1.) In December of 2002, the parties created SNAP Housing Limited Partnership I, SNAP Housing Limited Partnership II, and SNAP Housing Limited Partnership III (the "Partnerships") in conjunction with various other entities for the purpose of purchasing and developing low-income housing projects in Savannah, Georgia. (Doc. 8 at 5-6.) Plaintiffs are general partners of the Partnerships, while Defendant NEFAC is a limited partner. (Doc. 1 ¶¶ 4-5.)

According to the partnership agreements, Defendant NEFAC may remove Plaintiffs as general partners in the event of certain specified defaults—provided that Plaintiffs fail to cure such defaults within a reasonable time. (Id. ¶ 11.) On or about October 29, 2013, Defendant NEFAC sent a series of letters to Plaintiffs indicating its belief that defaults existed with regard to each partnership agreement and stating its intent to remove Plaintiffs as general partners if the defaults were not timely cured. (Id. ¶¶ 12-14.) Specifically, Defendant NEFAC

alleged that Plaintiffs had improperly commingled the Partnerships' funds with those of unrelated partnerships, lent partnership funds in violation of the partnership agreements, improperly distributed funds to themselves, failed to maintain sufficient reserve funds, failed to file the Partnerships' annual registrations with the state of Georgia, and violated other United States Department of Housing and Urban Development ("HUD") regulations. (Id., Attach. D, Attach. E, Attach. F.) According to Plaintiffs, they have since cured or offered to cure each of the identified defaults. (Id. ¶ 15.) However, Defendant NEFAC was unsatisfied with the offered cures and did not withdraw its notice of intent to remove Plaintiffs as general partners of the Partnerships. (Id. ¶ 16.)

On January 8, 2014, Plaintiffs filed this action seeking a declaratory judgment that they have either timely cured each alleged default or that they have been excused from their obligation to cure the defaults by Defendant NEFAC's rejection of the offered cures. (Id. ¶¶ 17-18.) Defendant answered and filed derivative counterclaims for breach of fiduciary duty and conversion on behalf of the Partnerships, as well as individual counterclaims for breach of contract and declaratory judgment, and requesting a full and complete accounting of all funds belonging to each of the Partnerships. (Doc. 8.) The facts

underlying each of Defendant NEFAC's counterclaims are the same as those which Plaintiffs dispute in their declaratory judgment complaint. Along with its answer, Defendant simultaneously filed its present Motion for Joinder seeking to add SNAP Investment, LLC—another general partner of the Partnerships—as a counterclaim-defendant and the Partnerships themselves as counterclaim-plaintiffs for the derivative actions. (Doc. 9.)

Plaintiffs subsequently filed both a response to Defendant NEFAC's Motion for Joinder (Doc. 14) as well as a Motion to Dismiss the counterclaims (Doc. 17). In both filings, Plaintiffs argue that Defendant NEFAC's counterclaims are improper and, as a result, joinder of the additional parties is unnecessary. Specifically, Plaintiffs contest that Defendant NEFAC failed to provide Plaintiffs with sufficient time to respond to its derivative demands, the derivative counterclaims are moot following Plaintiffs' resolution of the underlying claims, the derivative counterclaims constitute impermissible participation in the management of the Partnerships, and the provisions of the partnership agreements allowing Defendant NEFAC to remove the Plaintiffs are facially invalid.[1] (Doc. 14, Doc. 18.) Defendant NEFAC then filed a reply in defense of its Motion for Joinder

_____

[1] Although Plaitniff's Motion to Dismiss includes more detail and one additional argument in opposition to the counterclaims, the Court's analysis shall apply equally to both filings as the underlying arguments in both are identical.

(Doc. 19) and a response to Plaintiffs' Motion to Dismiss (Doc. 22).

**ANALYSIS**

I.   JOINDER

As an initial matter, the Court addresses whether joinder of the named parties is appropriate assuming the counterclaims survive. The addition of parties to counterclaims is governed by Federal Rules of Civil Procedure 19 and 20. Fed. R. Civ. P. 13(h). Rule 19, which governs compulsory joinder, states that a party must be joined to an action if "in that person's absence, the court cannot accord complete relief among existing parties." In addition, under Rule 20, a Court may permit joinder of a party where "relief is asserted against [it] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and any question of law or fact common to all defendants will arise in the action."

Here, it appears that joinder of the Partnerships and SNAP Investment, LLC would be appropriate under either Rule 19 or 20. First, as to Defendant NEFAC's derivative counterclaims, it is clear that the Partnerships must be joined as counterclaim-plaintiffs. See Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc., 140 F.3d 898, 909 (11th Cir. 1998) ("In a

partnership derivative suit, the partnership is an indispensable party."). Further, all of Defendant NEFAC's counterclaims revolve around the same common issues of law and fact. Snap Investment, LLC is a co-general partner in the Partnerships along with Plaintiffs, was included in Defendant NEFAC's initial letters to the general partners outlining its complaints, and the counterclaims seek relief against it jointly and severally with Plaintiffs. Accordingly, the Court finds that if the counterclaims are to survive, joinder of SNAP Investment, LLC as counterclaim-defendant and the Partnerships as counterclaim-plaintiffs is appropriate.

The Court also notes that Plaintiffs make no argument concerning the parties standing under either Rule 19 or 20.[2] Rather, Plaintiffs simply oppose the counterclaims themselves, and thus argue that joinder is unnecessary. These arguments are addressed below.

## II. STANDARD OF LAW FOR MOTION TO DISMISS

Although the claims reviewed by the Court in this instance are counterclaims, the pleading standards are the same as if they were brought in a complaint. Federal Rule of Civil

---

[2] Initially, Plaintiffs objected to the joinder of SNAP Investment as well as the Partnerships arguing that their inclusion in this case would divest the court of diversity jurisdiction. (Doc. 14 at 1-8.) However, Plaintiffs have subsequently conceded that the Court would retain supplemental jurisdiction over such claims. (Doc. 19.)

Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Aschroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).[3] "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (internal quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id.

Normally, when the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing

---

[3] Iqbal makes clear that Twombly has been the controlling standard on the interpretation of Federal Rule of Civil Procedure 8 in all cases since it was decided. Iqbal, 556 U.S. at 684 ("Though Twombly determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8 . . . [that] in turn governs the pleading standard in all civil actions and proceedings in the United States district courts." (internal quotations and citations omitted)).

the sufficiency of plaintiff's allegations." Sinaltrainal, 578

F.3d at 1268. That is, "[t]he rule 'does not impose a

probability requirement at the pleading stage,' but instead

simply calls for enough facts to raise a reasonable expectation

that discovery will reveal evidence of the necessary element."

Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir.

2007) (quoting Twombly, 550 U.S. at 545).

III. REASONABLENESS OF TIME TO RESPOND

First, Plaintiffs argue that Defendant NEFAC's derivative

counterclaims should be dismissed because Defendant NEFAC

allowed insufficient time under Maine law for the general

partners to bring such claims themselves.[4] (Doc. 18 at 2.) Before

bringing a derivative action on behalf of a limited partnership,

Maine law requires that a limited partner must "first make[] a

demand on the general partners, requesting that they cause the

limited partnership to bring an action to enforce the right"

unless such demand would be futile.[5] ME. REV. STAT. tit. 31,

§ 1422. Only if the general partners do not bring suit within a

reasonable time may the limited partner initiate a derivative

---

[4] Both parties appear to agree that Maine law applies to the
Partnerships and the partnership agreements.
[5] The parties dispute whether by demanding the Partnerships bring
suit, Defendant NEFAC has waived its right to later assert that
demand would have been futile. (Doc. 18 at 3 n.2; Doc. 22 at 11-
13.) However, because Defendant NEFAC has not made a demand
futility argument at this time, the Court need not prospectively
address this issue.

action. Id. Here, Plaintiffs complain that the fourteen days offered in Defendant's derivative demand letters for the general partners to determine whether to bring suit is facially unreasonable. (Doc. 18 at 3-4.)

In support of their argument, Plaintiffs cite to a statute governing Maine corporations that requires ninety days between the date of a derivative demand and the filing of a derivate suit. ME. REV. STAT. tit. 13-C, § 753. While the statute applies only to corporations and not partnerships, Plaintiffs point out that courts often look to corporate law for guidance in analyzing partnership derivative actions. (Doc. 18 at 4 n.4.) Further, Plaintiffs list various district court decisions from Connecticut, Massachusetts, Delaware, and Pennsylvania wherein derivative suits were dismissed despite being filed much longer than fourteen days after demands were first made. (Doc. 18 at 5.) In addition, Plaintiffs argue that fourteen days is particularly unreasonable given the complex nature of Defendant's allegations and the time the general partners would need to investigate the claims. (Doc. 18 at 6.) Also, Plaintiffs contend Defendant NEFAC's derivative claims should be precluded because the decision not to bring suit was a reasonable decision by the Partnership's management protected by the business

judgment rule.[6] (Doc. 8-9.) Lastly, Plaintiffs maintain that Defendant NEFAC was unreasonable in not further negotiating with Plaintiffs about its concerns prior to filing suit. (Doc. 18 at 7-10.)

In response, Defendant NEFAC points out that the reasonableness of the amount of time given before filing a derivative suit is determined on a case-by-case basis in light of the context in which the demand is made. (Doc. 22 at 6.) Indeed, one of Plaintiffs' own cited cases states that "length of time is not the primary consideration" and "holds little import in itself." In re Smith & Wesson Holding Corp. Derivative Litig., 743 F. Supp. 2d 14, 19-20 (D. Mass. 2010). Next, Defendant goes on to distinguish the cases cited by Plaintiffs, noting that they involved large corporations unlike the Partnerships. (Doc. 22 at 5-6.) Based on this difference, Defendant NEFAC argues that it would require far less time for Plaintiffs to investigate the issues in this case. (Id. at 6.) In response to Plaintiffs' argument concerning the business judgment rule, Defendant NEFAC argues that such protection is

---

[6] Plaintiffs bring their argument concerning the business judgment rule in their discussion of whether they were given a reasonable amount of time to investigate Defendant NEFAC's derivative demands. It is unclear to the Court how the business judgment rule's protective deference to management's decisions might play into this analysis. Nevertheless, the Court will address Plaintiff's argument in this section to avoid further confusion.

not available because of Plaintiffs' inherent conflict of interest in addressing derivative claims alleging self-dealing on the Plaintiffs' part. (Doc. 22 at 14.)

The Court finds Plaintiffs' arguments without merit. First, as noted above, the factual issues underlying Defendant NEFAC's counterclaims are the same as those underlying Plaintiffs' declaratory judgment action. Thus, it is difficult for the Court to accept that Plaintiffs were unable to investigate the claims properly before Defendant NEFAC asserted its counterclaims. In addition, there is nothing in the case law provided by Plaintiffs that suggests fourteen days is facially unreasonable. Rather, as Plaintiffs admit, "a determination of what constitutes a 'reasonable time' to commence suit [under Maine partnership law] is a factual one." (Doc. 14 at 10.) In this case, the Court finds nothing to suggest Plaintiffs were unable to fully investigate this matter before Defendant NEFAC's brought its counterclaims.

Furthermore, the Court notes that Plaintiffs, on behalf of the Partnerships, already responded to the derivative demands and informed Defendant NEFAC that they would not be initiating suit. Plaintiffs do not provide, and the Court cannot find, any support for their apparent proposition that the "reasonable time" required by Maine law allows an opportunity for the

11

general partners to first decline to bring suit, followed by further negotiations between the parties. (Doc. 18 at 9-10.) Only under this set of circumstances would the decision not to bring suit have any impact on whether the time afforded in the derivative demands was reasonable. As a result, the Court finds Plaintiffs' argument that it has not been afforded sufficient time to consider the allegations insincere at best. Accordingly, the Court will not dismiss the Defendant's counterclaims based on Defendant's alleged failure to provide the general partners adequate time to determine whether to bring suit.

Lastly, as to whether the business judgment rule should preclude the derivative claims, the Court will not address the parties' additional arguments at this time. In general, Defendant is correct that instances of self-dealing such as those alleged in its counterclaims would not be protected by the business judgment rule. However, given the complex factual dispute between the parties on this issue and the nature of the allegations implying bad faith on behalf of the general partners, the Court finds this issue best addressed at the summary judgment stage. See, e.g., F.D.I.C. v. Stahl, 840 F. Supp. 124, 18-29 (S.D. Fla. 1993) ("[a]pplying the business judgment rule to . . . motions to dismiss would be inappropriate.").

IV.  MOOTNESS OF COUNTERCLAIMS

Plaintiffs next argue that the derivative counterclaims should be dismissed as moot because an agreement regarding the issues in question has already been reached between the Partnerships and the general partners. (Doc. 18 at 11.) Specifically, Plaintiffs state that they have already admitted owing money to the Partnerships, have already repaid a portion of the funds, and assured the Partnerships that the remaining balance will also be repaid. (Id.) Defendant NEFAC responds that such a factual defense relies on evidence outside of the pleadings and, even if the money has been repaid, the harm caused by Plaintiffs' actions can still support the derivative claims. (Doc. 22 at 15.)

Plaintiffs' contention that the issues presented in Defendant NEFAC's counterclaims are moot challenges the subject matter jurisdiction of this court. Federal Courts only have jurisdiction over cases or controversies and "an action that is moot cannot be characterized as an active case or controversy." Adler v. Duval Cnty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997.) Accordingly, "[i]f events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is

13

moot and must be dismissed." Al Najjar v. Ashcroft, 273 F.3d 1330, 1333 (11th Cir. 2001).

However, the Court is presently unable to evaluate the merits of Plaintiffs' mootness argument. No claims were ever brought and settled by the Partnerships such that the Court could readily determine their preclusive effect. Defendant NEFAC meanwhile maintains that a case or controversy still exists because Plaintiffs' purported cures are unsatisfactory and do not fully resolve the issues upon which Defendant NEFAC bases its derivative counterclaims. Taking the facts alleged by Defendant NEFAC as true—as the Court must do at the this stage—the Court properly has jurisdiction over this matter.[7] While it may very well be shown that Defendant NEFAC lacks evidentiary grounds to support its claims, the Court cannot conclude that such is the case at this time. Plaintiffs may reassert their arguments with respect to mootness at summary judgment.

---

[7] Defendant NEFAC is also correct in stating that Plaintiffs' mootness argument attempts to preemptively resolve the merits of this case. The same facts underlie both Defendant NEFAC's counterclaims as well as Plaintiff's own declaratory judgment action. Because the claims are in essence mirror images of one another, a determination that Defendant NEFAC's counterclaims are moot would simultaneously also resolve Plaintiffs' declaratory judgment action in their favor. The mutually exclusive nature of Plaintiffs' and Defendant NEFAC's claims further illustrates the Court's current inability to properly address the mootness question. Accordingly, the Court must defer ruling on whether a case or controversy actually exists in this case prior to discovery.

V.   CONTRACT TERMS PRECLUDING COUNTERCLAIMS

Plaintiffs make two general arguments that the terms of the partnership agreements preclude Defendant NEFAC's counterclaims. First, Plaintiffs maintain that by bringing the derivative claims on behalf of the Partnerships, Defendant NEFAC has violated the partnership agreements by infringing upon the general partners' right to manage the Partnerships. (Doc. 18 at 13.) According to Plaintiffs, the decision to bring a lawsuit is a management decision, and thus properly within the sole province of the general partners. (Id. at 14.) Moreover, Plaintiffs state that derivative actions are appropriate only when a party has no other avenue or relief, and in this case Defendant NEFAC has waived its right to bring a derivative action in favor of an alternative contractual right to seek removal of the general partners. (Id. at 15.)

Interestingly, given Plaintiff's argument concerning the availability of Defendant NEFAC's alternative remedy, Plaintiffs' second preclusion argument is that the partnership agreement provisions under which Defendant NEFAC seeks to remove Plaintiffs are invalid. Specifically, Plaintiffs contest that replacing a general partner necessarily involves a voluntary transfer of that general partner's interest and thus, due to another provision in each of the partnership agreements, must

meet certain conditions that have not been pled in this case and may in fact be impossible. (Id. at 16-18.) As such, Plaintiffs argue that the removal process contemplated by the partnership agreements is internally unworkable and Defendant NEFAC's declaratory judgment counterclaim regarding its right to remove Plaintiffs as general partners should be dismissed.

In response, Defendant NEFAC first argues that it has not waived its right to bring derivative claims. (Doc. 22 at 17-19.) In support of its position, Defendant NEFAC points out that Maine law statutorily prohibits limited partners from acting on behalf of or binding a limited partnership, yet still allows for a limited partner to bring a derivative claim. (Id. at 16.) While the language of the Maine statute and the partnership agreements is not identical, Defendant NEFAC maintains that the law demonstrates the general principle that an agreement to withhold from operating in the management of a partnership does not necessarily preclude a limited partner's ability to initiate a derivative suit. In addition, Defendant NEFAC states that the language of the partnership agreements is too general to constitute an intentional waiver of Defendant NEFAC's rights to bring a derivative claim and, in any case, waiver is an issue of fact for a jury to decide. (Id. at 17-18.)

With regard to Plaintiffs' claim that the partnership agreements contain internally conflicting language, Defendant NEFAC argues that Plaintiffs' position relies on an improper legal conclusion. Namely, Defendant NEFAC disputes Plaintiffs' contention that replacement of a general partner necessitates a transfer of that partner's interest to a new general partner. (Id. at 19-20.) As a result, there is no conflict within the provisions of the partnership agreements. In support of its position, Defendant NEFAC points to Maine law that allows for a partner to retain its interest despite giving up any right to participate in the partnership's management. See ME. REV. STAT. tit. 31, § 1375(1)(E) ("[A]ny transferable interest owned by the person immediately before dissociation in the person's capacity as a general partner is owned by the person as a mere transferee.").

While the Court is doubtful that Defendants are contractually precluded from bringing suit, the Court need not address these issues here. It is true that, in some circumstances, the Court may review attached documents incorporated into a pleading when evaluating a motion to dismiss.[8] See Fed. R. Civ. P. 10(c) ("A copy of a written

---

[8] Defendant NEFAC does not include copies of the partnership agreements in its counterclaim, but does incorporate them by reference to Plaintiffs' original complaint. (Doc. 8 at 5-6.)

instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Dismissal is appropriate if a document that is appended pursuant to Rule 10(c) forecloses recovery as a matter of law. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007). However, such is not the case here. Rather, Plaintiffs' arguments are those of contractual interpretation and unfit for determination at this stage. See, e.g., McKissack v. Swire Pac. Holdings, Inc., 2011 WL 1233370, at *3 (S.D. Fla. 2011) (unpublished) ("A court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment."). Accordingly, the Court will not conclude as a matter of law that Defendant NEFAC is contractually prohibited from bringing a derivative counterclaim, nor will the Court dismiss the counterclaims because the contracts contain potentially conflicting language. These arguments may be reasserted at summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant NEFAC's Motion for Joinder (Doc. 9) is **GRANTED** and Plaintiffs' Motion to Dismiss (Doc. 17) is **DENIED**. SNAP Investment, LLC shall be joined in this action as a counterclaim-defendant. SNAP Housing Limited

Partnerships I, II, and III shall be joined in this action as counterclaim-plaintiffs.

SO ORDERED this 27ᵗʰ day of March 2015.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA